All right, our next case is Lucas versus VHC Health and let's see, Mr. Wolfman And Miss Samuels is also going to argue and but Mr. Wolfman you're doing the rebuttal Yes, you're all right. I'm glad to hear from you May it please the court. This court should reinstate all of Miss Lucas' claims. I'll begin with race discrimination, then turn to retaliation, and finally address disability discrimination. As to race discrimination, Miss Lucas alleged that her treating physician informed her that she does not care to take care of black people and then terminated her care shortly thereafter. That is an allegation of classic direct evidence race discrimination and it's more than enough to withstand a motion to dismiss. Counsel, do you think on that point alone, do you think you need the amended complaint? We do not believe so, Your Honor. Because the amended complaint clarifies the timing of that statement with respect to the termination of the doctor-patient relationship? It seemed to me at least. It does. And so if I could extend my answer, which is that we don't think we need the amended complaint on that claim or any claims as we say in our brief. But certainly the amended complaint, if you were concerned, would not have been futile. It adds a date. It adds additional allegations of race discrimination. For instance, like telling Miss Lucas to go to a hospital that serves predominantly black community in the District of Columbia. The District Court, I guess, determined futility because of the reasoning that one incident is not enough. And maybe if that's the test, it would not change a lot regardless of when it happened. You dispute that. I do dispute that. And let me explain why. The doctrine is the stray comment doctrine, not the one incident doctrine. And so it's no different here than if an employer had a policy of not hiring Catholic workers, learns that an employee is Catholic and fires the employee a week or two later. That's this case. So that's not a stray comment. The stray comment doctrine is when a comment is separated in time or context or the authority of the decision maker. None of that is present here. If the court doesn't have anything further on that, I will turn to retaliation. As to retaliation, I want to begin. So what about disability? You have a separate claim from disability. That is correct. And I can turn there if the court wishes me to. Well, you have a race claim, a disability claim, and then you have retaliation. So I thought disability was at least somewhat tied up with your retaliation claim. That's right. Can I turn to the retaliation and I'll go to disability if that's okay, Your Honor? All right. No one here disputes the basic elements of retaliation that she complained of discrimination in the provision of health services and then VHC took a materially adverse action against her. The question is whether the ACA bans retaliation in the first place. It does. The ACA broadly prohibits discrimination and incorporates Title VI, Title IX, and the Rehab Act, which also ban discrimination. The courts have universally held, most prominently the Supreme Court in Jackson and this court in the Title VI decision in Peters, that an express ban on discrimination, standing alone, that word standing alone, includes a ban on retaliation. But the Supreme Court has said we look at it differently if the statutory scheme has an express retaliation provision. That's right. And with respect, this statute does not. If you're referring to Section 1558, 1558 is a whistleblower protection for employees of entities that provide health services and perhaps insurers. And it wants to encourage whistleblowers to come forward internally with respect to violations of the Affordable Care Act. It's not an anti-discrimination provision. So, for instance, if an employer, an insurer, is violating Well, it has to be an anti-discrimination provision in a broader sense because retaliation is a form of discrimination. That is correct, but not in the sense Subsection A says no employer shall discharge or in any way discriminate. Right, that's right. And so it is discriminatory in that sense. But what I meant, Judge Agee, and I didn't mean to be evasive at all, is that 1557 is trained on particular types of historical discrimination by incorporating Title VI, Title IX, and the Rehab Act. This is a whistleblower protection statute that goes much broader in one sense because if you violate, if there's a report of any violation of the Affordable Care Act, such as the minimum care provisions, such as the prohibition on, you know, with respect to the giving of credits to certain individuals, if a person notes, an employee sees, that the health care agency is violating these provisions, they want to encourage people to whistleblow because they're internal to the organization. Sure. I mean, let me just stop you. I don't just, I think there's no, I don't disagree at all that 1558 encompasses someone blowing the whistle on conduct that doesn't involve them. So if the question is, does it include that, I don't think there's a whole lot of question that it does. The question, the question I have, though, is doesn't it also, by its expressed terms, include retaliation against someone who complains much the same way that the Title VII retaliation provision does? Stated at that broad level of generality, yes. But it's about something entirely different. How can it be about something different if it includes the retaliation? I mean, if saying, you know, a provision includes retaliation about your own reports of violating the statute, and it includes discrimination if you report someone else's violations of the statute, how can you say it's about something else? It's about something more, but not something else. Well, it is about something more, but something quite less than 1557 is aimed at, which is 1557 is principally aimed at first parties, if you will, people who are discriminated. 1557? 1557, yes. Correct. And 1558 is trained on third parties to a transaction. Where does it say that? It doesn't say that, but that's the purpose of it because it applies to any employee. So if you think someone brought a retaliation, if Lucas here had sued for retaliation under 1558, that we should dismiss that as, you know, not supported by law? She could not sue under 1558 because she was not an employee. Okay, let's say there's an employee who's retaliated against, and not reporting a third party's, you know, some retaliation. Hey, not saying VHS is retaliating against all these people. They retaliated against me. I'm an employee of VHS, and I'm bringing my case under 1558. That would clearly be okay, right? I take the point that there is maybe some narrow.  But these, in general, these are aimed at quite, quite different things. 1557 is to protect what I'm calling first parties. Why do you say that? Because we know historically that Title VI, Title IX, and the Rehab Act are to prevent discrimination against individuals who suffer the discrimination. We know that whistleblower statutes like 1558 are to encourage people who are internal but third party to the transaction to blow the whistle. That's the purpose of whistleblower statutes. Do you want to talk about purpose? I mean, don't we get the purpose from the text? I'm looking at the text, and let me say. But you just told me, I thought, and I don't mean to put words in your mouth. I thought you just told me that the text of 1558 would permit an employee to bring a retaliation case. It would. It would. 1558 would permit that. Let me say one other thing, or a couple other things, if I might. 1557 and 1558 may appear somewhat related in the sense that they are next to each other in a section of miscellaneous provisions of the Affordable Care Act. So they were enacted at the same time? They were. But so was the whole act. The 1558 is codified in an entirely different part of the U.S. Code. That's part of the relevant point, that they were enacted at the same time, because you have a statute here, 1557, that clearly goes to discrimination in any health program or activity. But it has all these additional code sections before that, which would seem to say, if you have a health discrimination claim, it has to fit within one of these four statutes. That is correct. This Court said that in BASTA. I agree with that. Let me make one more point about 1558's irrelevancy. I don't disagree with that point at all, Judge Agee. I think that helps us because those statutes have historically, time after time after time after time, been said to include a prohibition on retaliation. But let me say one other thing about this. When I first saw 1558, I was tempted to say, when Congress knows how to deal with employees, it will say so expressly. It didn't say it in 1557. Therefore, we win. But I think the better answer is they have nothing to do with each other. I want to end with this, which is that 1557 incorporates Title VI, Title IX, which is about education, the Rehab Act, which is about discrimination often in health services. It incorporates statutes that do not train unemployment, like Title VII does. These statutes do not train unemployment, and it would be spectacularly odd, therefore, to import a limitation about employment in a whistleblower protection statute because whistleblowing is historically about employment. Okay. Of Title VI and the Rehab Act. Again, they correspond to the race discrimination claim and the disability discrimination claim. All right. And tell us exactly what is the disability claim. I never got to that. Okay. I see I'm eating into my rebuttal. That's all right. I want to do this briefly, if I could. Ms. Lucas alleged that because of her diagnosis of PTSD and other things and other disabilities, the defendants, I'm quoting now from the complaint, asserted that her physical pain was not real. It was only in her head. And despite contrary medical tests, that's at JA-8, a hospital staff made it clear to her that they believed because of her diagnosed emotional conditions, again, I'm quoting the complaint, she was fabricating the seriousness of her contractions and pain. This is at JA-18-19. Again, shortly thereafter, she is dismissed from the medical practice. And so we believe at the...  But so here you have health care providers who make a medical diagnosis, if you will, that this is psychosomatic. The way I understand your argument is, despite that medical diagnosis, in order to avoid a disability claim, they have to act contrary to their medical judgment to provide the plaintiff a treatment that they do not think is medically authorized. That is not our position. All right. So you tell us what it is. I would like to explain why. We acknowledge that a claim about disability discrimination in the health care setting is a difficult one. Because, yes, of course health care providers have to take into account people's ailments, including things that are disabilities as a matter of law. But here the allegation is that they thought and they indicated to her that the pain was, as you say, psychosomatic, contrary to medical tests indicating that she was in pain. So there are going to be circumstances in which a person can make out a claim of disability discrimination if you can prove that the health care provider intended to dismiss this person because of their disability. Is it going to be more difficult?  But I don't think you make that. I don't think that allegation is there. In fact, it pleads to the contrary, that this is what the health care providers believed, that this was a psychosomatic condition. I mean, that's her own pleading. I don't believe so, Your Honor. Elsewhere in the complaint she says it was obvious she was writhing in pain. Her stomach was visually balled up. She was crying out in pain. And contrary to medical tests and medical records indicating that she needed pain medication. So she thought they told her that she was fabricating her pain, but they really wanted to dismiss her because of her disabilities. Now, let me say this. All right, do it quickly because we've let you go way over. Yes, let me just, but I do want to wrap up here. We are at the motion to dismiss phase. I realize that this case requires more PACs to get us over to the next stage, summary judgment and trial. And we plan to do that. But she's entitled to all inferences in her favor. Just one quick thing. If we agree with you on the motion to amend, doesn't your amended complaint not include those allegations about disability? No, I mean, I think the allegations I read you are from the initial complaint. What the amended complaint adds, and the amended complaint adds that a lack of trust is a symptom of PTSD. But it removes the stuff that they thought it was in her head. That is not my understanding, Your Honor. I'll double check. That is not my understanding. But I do want to just emphasize that we are at a motion to dismiss phase. She's entitled to all inferences in her favor. Thank you. Thank you, Mr. Wolf. We'll give you some rebuttal time, Ms. Samuels. Good morning, Your Honors. May it please the Court. Jessica Samuels on behalf of the United States. I'm here this morning to focus on the... I'm sorry. You're representing who? The United States, the federal government. All right. And I'm here on just the narrow, discreet legal question about whether Section 1557 of the Affordable Care Act encompasses retaliation. If I could, I'd like to jump straight into the discussion that Judge Quattlebaum, you were having with counsel for plaintiff, which is whether Section 1558 is an express anti-retaliation provision. I think the easiest way to think about this is that courts have interpreted what Congress has done by looking at whether the anti-discrimination regime is, some of the words courts have used, broad, capacious language, undifferentiated. You know, just one sentence, thou shalt not discriminate. As compared to an anti-discrimination regime that is precise, is a word the courts have used, complex... But they're talking about in their... As I read it, particularly in Nassar, they're talking about the overall statutory scheme. It doesn't look to me like they're looking at the specific anti-discrimination provision. Maybe you disagree with that. But as I read Nassar, there's reference after reference to statutory schemes, statutory structure, and there's certainly some anti-discrimination cases that are very short and are broadly prohibited. The ACA, I don't think it... Maybe you would argue 1557 is short and broad, but the ACA as a whole is probably not going to be characterized as short and, yeah, short, short, a simple broad thing. Agreed. Agreed, Your Honor. So the question is whether you look at 1557 alone or whether you look at the Act as a whole. Do you agree with that? I do agree that's the question, but I think the reason that we're on the broad, undifferentiated side of the line is because 1557 is the anti-discrimination regime. But the statutes the court was looking at in Nassar were Title VII, which is an anti-discrimination regime. Title VII wasn't buried in something, a law that addressed an entire industry that reformed all of health care, all of health insurance. So the issue is that the Patient Protection and Affordable Care Act, to say that by including other things, it undermined the anti-discrimination regime, it's not apples to apples in that way. So it seems to me if rather, I mean, as I read 1558, I get why you would label it, and you did in the footnote in your brief, a whistleblower claim. And your colleague says that, and like I mentioned earlier, I think it would certainly encompass whistleblowing. But, you know, I think as your colleague conceded, and I think he had too, that it would encompass an employee's direct retaliation claim too. And so I'd love to hear if you disagree with that. I'd be open to hearing that. I think the better, and I think Nassar then presents a real question of how we look at this. I think that the contrary argument would be, well, you know, if you were just saying discrimination on the base of race, age, gender, maybe Nassar is right on target and this 1558 is a problem. I think the best argument is that 1557 incorporates specific statutes that have been interpreted to include retaliation. So are we able then to, are we really in Nassar land there or not? Does that make sense in terms of, you know, kind of how to figure this out? I think that Your Honor is looking exactly to the same authorities that we think control this, but we think they go the other way. I'm not surprised. I'm not saying where I think they go. I just want you to help me out. Here's why. Let me start with the kind of 1558 coverage question and then let's turn to what Nassar says about it. The 1558 coverage question. We're going to give you an extra minute or two, but your time is running. Thank you, Your Honor. 1558, I agree, covers employers, and it covers employers who blow the whistle on conduct that violates the ACA. As Your Honor noted, that is a long list of things. You can violate the ACA many, many different ways. For example, denying coverage for preexisting conditions. One of the ways that you can violate the ACA is by discriminating on protected characteristics in violation of 1557. So I agree that there is a narrow overlap between these statutes. Again, a hypothetical overlap not presented by this case I think is an important point to note. We don't have an employee here. This is a Heartland 1557 patient health care case. But for the sake of the interpretive exercise, that overlap doesn't mean we read 1557 any narrowly, because the rule of construction isn't that a cause of action can only arise under one statute or the other. Courts have consistently, especially in the anti-discrimination context, in the CBOCS case, the Supreme Court noted that Congress has acted with a general intent in the anti-discrimination context to provide overlapping protections against discrimination, which we read to encompass retaliation. So I understand Your Honor's point that there could be some hypothetical overlap about maybe an employee who is retaliated against for complaining about discrimination very well may have a claim under both of those statutes. I don't think that's a problem. I think that Congress was rooting out two different kinds of ills and the fact that they may have caught. That would be a lot of what Justice Ginsburg says in Nassar. And that turned out not to be the lull after Nassar. So Nassar, as I read it, says when Congress imposes a specific retaliation claim, and it calls that its most pertinent for present purposes, its most important issue in saying that the general anti-discrimination claim in Title VII didn't cover retaliation was that they had a retaliation claim, they were thinking about retaliation, and they defined the contours of retaliation. And here one could say, perhaps, that that very same thing happened. I don't think so, Your Honor, because in Nassar, the court was distinguishing between anti-discrimination regimes that contemplated retaliation. So Title VII had an express retaliation provision. Here, Section 1557 is the anti-discrimination regime. It just happens to be enacted in part of the Patient Protection and Affordable Care Act. So if Congress had enacted Section 1557 as an anti-discrimination regime the next day or something, it's just a technicality, I guess, that that regime is in the next to 1558. That's how they took them up. But technicality, I mean, Congress passed an act. Yes, Your Honor. And they got the act, and right next to each other, two provisions. But you can see those provisions they enact. I'm sorry, Your Honor. No, no, no. Continue. The provisions amended different sections of the United States Code. So 218C, Section- I understand that. It's the FLSA. Exactly. And so we see here that Congress, I agree in the same act, but they're enacting in 1557 an anti-discrimination regime on protected characteristics, and in 1558 a whistleblower regime based on violations to the health care law. What's your authority that we should look about-  I'm sorry, Judge Rushing. Go ahead. No, I don't want to cut off Judge Karlbaum's line of questioning. I was just going to ask for a clarification. I understood your brief to make two different arguments about how retaliation is part of this statute. One was directly through the inclusion of discrimination in 1557, and another alternative was because 1557 incorporates the grounds in all these other statutes. What we're talking about right now seems to me to go to the first question. When Congress referred to discriminate in 1557, does 1558 tell us that that didn't include retaliation because retaliation is talked about elsewhere? Does it have any effect on your second argument, that 1557 incorporates all the grounds that are prohibited by these other statutory schemes, and some of those include retaliation? I don't think that 1558 affects that second argument, and the textual basis for that is that Section 1557 is incorporating the grounds of discrimination of those underlying statutes, and what we know about those underlying statutes is the grounds of discrimination include retaliation. Which was my question that I probably asked inartfully, is whether there would be a difference in this section, as Judge Rushing just talked about, where it does incorporate specific statutes that include retaliation. It seems to me that's your best argument, because if they rather than cited those statutes, they used the status categories of race, age, et cetera, I think the Nassar would loom larger. Maybe it applies either way, but does that make sense? Accepting that we are disagreeing about which way Nassar cuts, again, I think Nassar is strong authority for us. I just want to note that, but accepting that, I do think that the statutory incorporation of the grounds of prohibited discrimination, you don't even have to get into any of this. All right, thank you very much. Thank you for the extra time. Mr. Walkinshaw. Good afternoon. May it please the Court, Paul Walkinshaw for the defendants. The district court's decision below dismissing the complaint was absolutely correct, and we believe it should be affirmed. We are dealing here with a complaint that is 21 pages long, that is mostly incongruent, speculative, conclusory, and implausible. And the district court was correct in making those determinations with respect to the discrimination claim alleged under the ACA and the rehabilitation claim alleged under the ACA. We also believe the district court was correct in finding that the novel theory espoused with respect to retaliation was just that, novel, and has not been countenanced by any court before we arrived here today. So we ask that you affirm. On to the decision with respect to the discrimination claim. I've been over this complaint time and time again, and I could not agree more with the district court that there was really only one factual allegation related to discrimination, and that is Dr. Mears' alleged statement that she does not treat veterans or blacks. That is the only concrete factual allegation. So why is that not enough? That is not enough because that statement allegedly occurred, first of all, we're not sure when it occurred, and second of all, she doesn't link it up with any affirmative action. But that's not what the district court did. The district court said one isolated incident isn't enough. In fact, the district court challenged your assessment that it happened after the termination. It said that was unclear. And the amended complaint makes it clear that it happened before. So I think the question is, if someone makes a direct statement, they're not going to treat you because you're black, how could that be anything other than the most clear case of racial discrimination you could have? Where is the allegation that Dr. Mears did not treat her? It's not shown. She was discharged as a patient. The discharge, and I agree with you there, but I think it's important here to distinguish between her allegation. She was here at motion to dismiss, not summary judgment, which I think makes a significant difference. I agree. But I think it's important, based on her allegations alone, to distinguish between her allegation that her preterm contractions weren't treated, which is what happened in August, and her dismissal, which she claimed she was notified of in September, but actually was dated August 31. The dismissal, Ms. Lucas alleges time and time again, was really not discriminatory. It was retaliatory. And that's why we're talking about retaliation so much, is because her entire complaint, I could cite every page of the complaint, mentions retaliation. And that's what the district court found, is that her dismissal claim is primarily one for retaliation. So you're saying, I think, if I can just intervene to make sure I'm understanding it, that she was treated. She may have complaints about her treatment, but she was treated. The statement, she was terminated, perhaps based on her complaints. And perhaps, you know, what do we make of the statement, at least that the doctor made, that we're not going to treat you anymore. You're going to be terminated as a patient because of your race. Well, she didn't say we are dismissing you from the practice because of your race. What Ms. Lucas has alleged is that she was dismissed from the practice because she reported that she witnessed the phlebotomist incident, which she mentions in the complaint, and reported that she was discriminated against. And it was that report that caused her to be dismissed from the practice. So there is no link-up, plausibly alleged, in my view, between Dr. Muir's statement and the dismissal from the practice, which does render it a lone, stray remark. Moreover, there is no allegation in the complaint as to what Dr. Muir did to treat her or not treat her. Other than, I shouldn't say other than, other than this one comment attributed to Dr. Muir, we don't know what Dr. Muir did or did not do for her because it is simply not alleged. So there is no link-up between Dr. Muir saying... She says I won't treat you because of your race. What else? I'm not quite sure what else you think there would need to be there. I would think there would need to be some evidence that Dr. Muir, that there were encounters with Dr. Muir in the August time period, regarding her preterm contractions, in which Dr. Muir refused to treat her. But that is not alleged. We have no allegations relating to that whatsoever. Which, again, I think is why we are talking about retaliation so much, because her... As Ms. Lucas admitted herself below, her claim is really one for retaliation, not discrimination. I'll touch briefly... To be fair, she said she's focused on, she's been focused on that, right? That she didn't disclaim the race discrimination claim, and she's pro se, right? This was in court. She's trying to explain her claims, and she says, well, my focus is on one of them. Are you actually arguing that she waived any race discrimination claim because of that? Well, I... The district court didn't find that she waived the discrimination claim, but I think that this court could find, based on some of those comments and the way that her complaint is structured, that yes, she likely has. Are we supposed to give a generous construction to a pro se complaint? Of the pleadings, for sure. Of course, typically we'll give a liberal construction for pro se plaintiffs, but that does not mean that you have to give it a creative construction or a creationist construction, if you will. And the courts are still bound by what's alleged in the complaint, despite the liberal standard granted to pro se plaintiffs. Let me make sure I understand. Is one of your arguments that we can find, as a matter of law, from our reading of the transcript, that the plaintiff abandoned the race and disability claims? Well, I think it was knowing and intelligent, which is, I think, what needs to be found in order to make that determination. Ms. Lucas put together a 20-page complaint and seemed to understand many of the legal arguments that were being made below, and she certainly understood the timing aspect, which is how, I believe, all of this came up, because we were arguing the statute of limitations, I believe, at that point in time. And I think Ms. Lucas clearly understood that she was alleging some acts of discrimination that occurred in August, before August 25 of 2018. And it was in that context that she said that the discrimination, her statute of limitations on the discrimination ran out. So that's why she focused on retaliation. And was, frankly, a clever pivot at the pleading stage to focus on retaliation in order to bypass the statute of limitations argument. With respect to the rehabilitation claim, we agree with the district court that, excuse me, and I believe what, Judge, you said earlier, that her own complaint pleads her out of the disability discrimination claim. And that is because she alleges that the reason for her dismissal was not solely because of her disability, but rather, A, for lack of trust, and then also, B, at page JA-12, paragraph 22 of her complaint, she says, she alleges that Dr. Muir informed her she is being dismissed because she said she did not have time to find another doctor in her high-risk pregnancy in her first trimester. Those are at least, those are two independent reasons for her dismissal, independent of her disability. That completely supports the district court's finding below that she did not adequately plead, and that she did not have time for disability discrimination. Turning to the retaliation aspect of this case, I wish I could persuade this court to adopt Justice Thomas' dissent in Jackson, and his dissent in Gomez, which came a few years after Jackson, in which he lays out, I believe, all of the arguments, that we are having today. One of them in particular — Sometimes it takes a long time before Justice Thomas' dissents become the majority, but be that as it may. That is correct. Justice Thomas lays out many of the arguments that we're having here today. One of them is that when it comes to a spending clause statute like we have here at the ACA, that — I don't mean to sidetrack you, but we really don't need to, I think, engage in whether Justice Thomas, whatever you think about that, is right if we're dealing with Supreme Court decisions that are contrary. Focusing on Supreme Court majority opinions, what's your argument to this? You heard my questioning with your colleagues there. Nassar may suggest in some circumstances the specific inclusion of retaliation may indicate that it isn't covered by anti-discrimination questions. But here, this statute in 1557 says that an individual shall not, on the ground prohibited, under — and it begins with Title VI of the Civil Rights Act. And isn't it true that under Title VI of the Civil Rights Act, retaliation is covered? Yes, Your Honor. So we could, in effect, read on the grounds prohibited by Title VI to be on the grounds prohibited by Title VI, which include retaliation? I mean, if we just follow what Title VI means based on the law? I don't think that it would be appropriate here for the reason that Congress obviously had retaliation on its mind when it passed the ACA. These provisions were passed into law on the same day. They were both part of the same statute. And as Justice Thomas in the dissent and then also the majority in those cases, particularly Gomez, pointed out, the Latin term for the canon I will seriously butcher, but it is the different terms canon. And that is when Congress has enacted a specific provision in the law that differs from another part of the provision, and you assume that Congress did so intentionally. And what we have here, what we would have if we were to adopt — So is that argument that by enacting 1558 Congress, in effect, deleted what it had written there between the commas in 1557? What it did was carve out a specific process for retaliation. It indicated that it was thinking about the retaliation claim, which although the case law suggests is a discrete, it's a different cause of action from discrimination. And they provided a mechanism for retaliation claims, for redress of those retaliation claims. I would say that if we were to adopt the government's position and the appellant's position that 1558 is simply a whistleblower provision and has no impact, then while at the same time agreeing that 1557, because it says discrimination, encompasses retaliation, then we're left wondering why enact 1558. I don't think that's what the government is saying completely, or Ms. Lucas is saying completely. I think they're saying that's one of their arguments, that the discrimination includes retaliation. And I think your point, Nassar, may help you there. But they're also saying that that's not what 1557 is limited to. It says, also, you shall not, it talks about an individual shall not on the grounds prohibited by those specific statutes. So I'm trying to figure out how that works. If you have, if it's expressly incorporating statutes that by law include retaliation, how do we look past that? Well, I would have two responses to that. One is that it's incorporating the discrimination framework and the definitions of those other statutes. I would argue that it is not incorporating the causes of, all causes of action laid out in those statutes. The second is... It talks about, at the bottom, the enforcement mechanisms too, right? It does. It does. It does say that. But there's an enforcement mechanism in 1558 as well. So, I mean, Congress clearly considered, and Congress knew in the background of all of this case law, that retaliation claims are separate and can be distinct from discrimination, even though they can also be included in the word discrimination. But why go ahead and pass a separate provision for retaliation if rights protecting retaliation are already protected by 1557? Which we have to... Well, the one reason is that it includes whistleblower protection in addition to direct retaliation. One reason is that it's amending the FLSA, and it may do some work in the FLSA even if it doesn't separately. So, you know, I thought about a superfluous argument, but it seems like the breadth of it would do more than just direct retaliation. Well, I'm not sure why they would carve out just for employees, especially if under their definitional arguments, employees would already have protection by being able to file a lawsuit. I hear your point that there is a whistleblower step before they can file a lawsuit, but they can, 1558 still authorizes them to file a lawsuit if the Secretary doesn't take any action. If there are no further questions, we would ask that...anything further? Thank you very much. We ask that you affirm. Thank you. All right. Mr. Wolfman, you have a little bit of rebuttal time left. Thank you, Your Honor. I will be brief, and I'll just begin by saying if the Court has anything further on the retaliation questions, I'm happy to answer, but otherwise I'm satisfied with what we've presented. I do want to say just a couple points on the notion that these claims of discrimination were abandoned. In addition to the reference to my client being pro se, she said that at the hearing, she was primarily focused on retaliation. She did not abandon the claim, and this Court's decision in Airfax makes very clear that you have to be explicit and precise and absolute if you're abandoning a claim at a hearing. Otherwise, as Airfax says, you rest on the complaint, and as I said, our complaint is more than sufficient. As to the disability discrimination specifically, opposing counsel simply said that, well, there's an alternative basis that is other than discrimination. It is a lack of trust. But that's drawing inferences in the moving party's favor. We don't, of course, concede that lack of trust was the real reason. We believe it was a pretext for discrimination. And again, that will be rolled out later at summary judgment or, we believe, at trial. Unless the Court has anything further, we just urge the Court to reverse on all claims. Thank you. All right. Thank you very much. We'll come down to Greek counsel, but first I'd ask the Clerk to adjourn Court for the day. Thank you. This Honorable Court is adjourned until tomorrow morning. That's the United States and this Honorable Court.
judges: G. Steven Agee, A. Marvin Quattlebaum Jr., Allison J. Rushing